Anthony SMITH, Petitioner,

v.

Timothy HALL, Respondent.

Civ. A. No. 93–10587–DPW.

United States District Court,
D. Massachusetts.

Jan. 4, 1995.

Willie J. Davis, Davis, Robinson & White, Boston, MA, for petitioner.

William J. Meade, Asst. Atty. Gen., Crim. Bureau, Boston, MA, for respondent.

*MEMORANDUM AND ORDER*

WOODLOCK, District Judge.

The Federal Rules of Criminal Procedure, reflecting long-standing federal practice, prohibit the presence of any person in the grand jury room other than the grand jurors themselves while the grand jury is deliberating or voting. Fed.R.Crim.P. 6(d).[1] By contrast, the Massachusetts Rules of Criminal Procedure, reflecting long-standing state practice, permit the prosecuting attorney to be present during deliberations and voting at the request of the grand jury. Mass.R.Crim.P. 5(g).[2]

Seizing upon this plain difference between federal and state grand jury practice, a state prisoner petitions for a federal writ of habeas corpus claiming his state court indictment—by a grand jury which requested the presence of the prosecutor during its deliberations and voting—was unconstitutionally obtained. If I were to treat such differences in grand jury practice between federal and state courts as supporting a determination of unconstitutionality in the challenged state practice, I would necessarily apply a new rule of constitutional law without any showing that fundamental fairness or accuracy in the state proceeding has been undermined. This a federal district court confronting a

---

1. Fed.R.Crim.P. 6(d) provides in relevant part that "no person other than the jurors may be present while the grand jury is in deliberation or voting."

2. Mass.R.Crim.P. 5(g) provides that "[t]he prosecuting attorney shall not be present during deliberation and voting except at the request of the grand jury."

state habeas corpus petition may not do. Accordingly, I will dismiss the petition.

## I.

Petitioner Anthony Smith was indicted on December 20, 1989, by an Essex County grand jury for assault and battery. The only witness before the grand jury was the police officer who investigated the attacks. Upon a majority vote of the grand jurors, pursuant to Mass.R.Crim.P. 5(g), the prosecutor was asked to remain in the grand jury room during deliberations.

Smith's pre-trial motion to dismiss the indictments because of the prosecutor's presence was denied. At trial in December of 1990, he was convicted. He was sentenced to serve 10 to 12 years in prison.

Smith appealed through the state system alleging, *inter alia*, that the prosecutor's presence during deliberations violated both Article XII of the Massachusetts Declaration of Rights and the Due Process Clause of the Fourteenth Amendment of the United States Constitution. The Massachusetts Supreme Judicial Court affirmed his conviction, *Commonwealth v. Smith*, 414 Mass. 437, 608 N.E.2d 1018 (1993).

Having exhausted his state court remedies, Smith filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254. He presses his claim that the prosecutor's presence in the grand jury room during deliberations violated his right to due process under the United States Constitution.

## II.

As a necessary threshold inquiry, I must address the question whether adoption of the principle petitioner relies upon to support his claim of unconstitutionality would result in an improperly retroactive application of a new rule of law.

### A. *The General Rule Against Retroactivity*

*Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), is the benchmark against which to measure the propriety of retroactive application of new constitutional rules. In *Teague*, the Court held that, with two exceptions, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310, 109 S.Ct. at 1075 (plurality). This is because "[a]pplication of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system." 489 U.S. at 309, 109 S.Ct. at 1074 (plurality).

■ The Court explained that "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." 489 U.S. at 301, 109 S.Ct. at 1070 (plurality) (citations omitted). Thus, before a federal court may reach the merits of a habeas corpus petitioner's constitutional claim, it must initially determine whether, as the Commonwealth contends here, it would be announcing and applying a "new" rule of constitutional law if it were to grant the relief the petitioner seeks. *See Caspari v. Bohlen*, —— U.S. ——, ——, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994) (if the State argues "that the defendant seeks the benefit of a new rule of constitutional law, the court must apply *Teague* before considering the merits of the claim") (citing *Graham v. Collins*, —— U.S. ——, ——, 113 S.Ct. 892, 894, 122 L.Ed.2d 260 (1993)).

In *Caspari v. Bohlen*, the Court directed that federal courts apply the *Teague v. Lane* rule using the following three steps:

First, the court must ascertain the date on which the defendant's conviction and sentence became final for *Teague* purposes. Second, the court must "[s]urve[y] the legal landscape as it then existed," and "determine whether a state court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution." Finally, even if the court determines that the defendant seeks the benefit of a new rule, the court must decide whether that rule falls within one of the two narrow exceptions to the nonretroactivity principle.

—— U.S. at ——, 114 S.Ct. at 953 (citations omitted) (substitutions in original).

### 1. *Finality of Petitioner's Conviction*

■ Petitioner's conviction became final on June 1, 1993, when the time for filing a petition for certiorari from the SJC decision expired. *Caspari v. Bohlen,* —— U.S. at ——, 114 S.Ct. at 953–54. I therefore survey the legal landscape concerning state grand juries as it existed at that time.

### 2. *Precedent Existing at the Point of Finality*

*Hurtado v. California,* 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884), established that the Due Process Clause of the Fourteenth Amendment does not require that a state provide indictment by a grand jury. Thus, although the Due Process Clause guarantees "a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury." *Alexander v. Louisiana,* 405 U.S. 625, 633, 92 S.Ct. 1221, 1226–27, 31 L.Ed.2d 536 (1972). For this reason, the federal courts have "never held that federal concepts of a 'grand jury' binding on the federal courts under the Fifth Amendment are obligatory for the States." *Id.*

Supervision of state grand jury charging practice under the federal constitution has not been entirely non-prescriptive, however. The Supreme Court has vigorously sought to assure that state grand juries are selected in a non-discriminatory fashion. In *Carter v. Jury Commission of Greene County,* for example, the Court held that:

> Once the State chooses to provide grand and petit juries, whether or not constitutionally required to do so, it must hew to federal constitutional criteria in ensuring that the selection of membership is free of racial bias.

396 U.S. 320, 330, 90 S.Ct. 518, 523, 24 L.Ed.2d 549 (1970) (footnotes omitted).

And the Court has been quite emphatic that any "taint attributable to a charging body selected on the basis of race" must be fully purged. *Vasquez v. Hillery,* 474 U.S. 254, 264, 106 S.Ct. 617, 624, 88 L.Ed.2d 598 (1986). Consequently, "[t]he overriding im-

perative to eliminate this systemic flaw in the charging process, as well as the difficulty of assessing its effect on any given defendant" has led to a rule of mandatory reversal for any prosecution upon an indictment returned by a tainted grand jury. *Id.*

The grand jury selection cases have generally employed equal protection analysis. Certain members of the Court have, from time to time however, been prepared to employ a due process analysis in the discriminatory selection context. Thus, Justice Marshall, announcing the judgment of the court in an opinion joined by Justices Douglas and Stewart contended that:

> a State cannot, consistent with due process, subject a defendant to indictment or trial by a jury that has been selected in an arbitrary and discriminatory manner, in violation of the Constitution and laws of the United States. Illegal and unconstitutional jury selection procedures cast doubt on the integrity of the whole judicial process. They create the appearance of bias in the decision of individual cases, and they increase the risk of actual bias as well.

*Peters v. Kiff,* 407 U.S. 493, 502–03, 92 S.Ct. 2163, 2168, 33 L.Ed.2d 83 (1972).

The Supreme Court has been considerably more diffident about aspects of state grand jury practice which do not raise questions of discriminatory selection. *Beck v. Washington,* 369 U.S. 541, 546, 82 S.Ct. 955, 958, 8 L.Ed.2d 98 (1962), exemplifying this circumspect approach:

> It may be that the Due Process Clause of the Fourteenth Amendment requires the State, having once resorted to a grand jury procedure, to furnish an unbiased grand jury. Compare *Lawn v. United States,* 355 U.S. 339, 349–350 [78 S.Ct. 311, 317–318, 2 L.Ed.2d 321] (1958); *Costello v. United States,* 350 U.S. 359, 363 [76 S.Ct. 406, 408, 100 L.Ed. 397] (1956); *Hoffman v. United States,* 341 U.S. 479, 485 [71 S.Ct. 814, 817, 95 L.Ed. 1118] (1951). But we find that it is not necessary for us to determine this question; for even if due process would require a State to furnish an unbiased body once it resorted to grand jury procedure—a question upon which we

do not remotely intimate any view—we have concluded that Washington, so far as is shown by the record, did so in this case. (holding grand jury and petit jury were unbiased despite adverse publicity).

More recently—and after petitioner's conviction became final—the Court this term declined to import a probable cause standard into state charging decisions as a matter of substantive due process under the federal constitution. *Albright v. Oliver,* —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). A majority of the Court in *Albright* found no textual support in the Due Process Clause for the probable cause standard and noted that pretrial deprivations of liberty as a result of criminal charges were addressed under the Fourth Amendment. The Court reiterated its general view regarding substantive due process by observing:

> Where a particular amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."

*Id.* at ——, 114 S.Ct. at 813 (quoting *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)).

The plaintiff in *Albright* did not frame the issue of state charging standards as one of procedural due process, —— U.S. at ——, 114 S.Ct. at 812, and consequently the Court did not address the issue from that perspective. Nevertheless the Supreme Court has in recent years addressed procedural challenges to federal grand jury practice similar to those raised by petitioner here as presenting allegations of a species of nonconstitutional error. A discussion of that case law is necessary for a thorough survey of the legal landscape existing at the time the petitioner's conviction became final.

In *United States v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), the Supreme Court considered an admitted violation of that aspect of Fed.R.Crim.P. 6(d) which allows only witnesses "under examination" to be present at the grand jury proceeding. Although two Government witnesses had testified in tandem before the grand jury, the Court held that the error was harmless beyond a reasonable doubt because of the subsequent guilty verdict by the petit jury. As the Court explained:

> ... Rule 6(d) was designed, in part, "to ensure that grand jurors, sitting without the direct supervision of a judge, are not subject to undue influence that may come with the presence of an unauthorized person." The Rule protects against the danger that a defendant will be required to defend against a charge for which there is no probable cause to believe him guilty. The error involving Rule 6(d) in these cases had the theoretical potential to affect the grand jury's determination whether to indict these particular defendants for the offenses with which they were charged. But the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt.

475 U.S. at 70, 106 S.Ct. at 941–42 (citation omitted) (Rehnquist, J.).

The determination in *Mechanik* that a subsequent verdict of guilty by the petit jury will render any procedural errors before the grand jury harmless was reinforced by the Supreme Court in the habeas corpus context shortly before petitioner's conviction became final. In *Brecht v. Abrahamson,* —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the Court held that in order to establish a constitutional violation—at least for those errors not involving " 'structural defects' " that "infect the entire trial process," *id.* at ——, 113 S.Ct. at 1717 (citing *Arizona v. Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991))—a state habeas corpus petitioner must demonstrate that the error " 'had [a] substantial and injurious effect or influence in determining the jury's verdict.' " *Id.* at ——, 113 S.Ct. at 1722 (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

The petitioner argues that the concurrence by Justice O'Connor in *Mechanik* can be

read in a fashion supportive of his claim. In that concurrence, Justice O'Connor observed:

> Prosecutors ... are bound by a few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions.

> Federal Rule of Criminal Procedure 6(d) is one such rule; it is designed to ... guarantee that the grand jury is given the opportunity to make an independent examination of the evidence and render its probable cause and charging determinations free of undue prosecutorial influence. For example, ... if the prosecuting attorney were to remain in the jury room during the jury's deliberations in contravention of the Rule, a very real possibility would arise that the jury's deliberations or vote would be unduly influenced by the prosecutor's presence.

475 U.S. at 74–75, 106 S.Ct. at 943–44 (O'Connor, J. concurring) (citations omitted).

Justice O'Connor then articulated a test for the remedy of dismissal upon a showing of violation of Fed.R.Crim.P. 6(d):

> [W]hen a defendant makes a timely objection to the grand jury indictment based on a violation of Rule 6(d), the remedy of dismissal of the indictment is appropriate if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt as to whether it had such effect.

*Id.* at 78, 106 S.Ct. at 945 (citations omitted).

Two years later, in *Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), the Court adopted this language from Justice O'Connor's concurrence as the governing standard "where dismissal is sought for nonconstitutional error," the kind of error the Court understood to have been alleged there and in *Mechanik,* 487 U.S. at 256, 108 S.Ct. at 2374.

In *Bank of Nova Scotia,* the District Court had dismissed several counts in the indictment because of prosecutorial misconduct. The case came to the Court as an appeal from orders of dismissal and not as a challenge to a conviction following a guilty verdict after trial. Thus, a final petit jury verdict of conviction did not there establish the harmlessness of any error in grand jury practice. The Supreme Court, nevertheless, reversed, holding that "as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." 487 U.S. at 254, 108 S.Ct. at 2373. As noted, the Court did apply the standard articulated by Justice O'Connor in her *Mechanik* concurrence, holding that "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." 487 U.S. at 256, 108 S.Ct. at 2374 (citations omitted). But after reviewing the District Court's findings, the Court determined that there had been no demonstration of any prejudicial effect of the alleged misconduct, which included a violation of Rule 6(d) occurring when two IRS agents appeared before the grand jury at the same time. 487 U.S. at 262–63, 108 S.Ct. at 2377–78. It bears emphasizing that the petitioner here has made no effort to demonstrate a prejudicial effect but relies only on the simple fact of departure from the directive of Fed.R.Crim.P. 6(d) in the state charging process.

It is evident from this survey that the legal landscape as it existed at the time petitioner's conviction became final was an inhospitable one for his federal constitutional claim. Indeed, the subsequent decision in *Albright v. Oliver* suggests the landscape has become even more inhospitable since his conviction became final. The petitioner does not present a discrimination challenge to grand jury selection, the one area in which the federal courts have taken an active role in policing state grand jury practice. Rather he seeks to have read into one of the few portions of the Bill of Rights—the grand jury clause—not specifically incorporated into the Fourteenth Amendment and thereby made obligatory on the states, a further obligation without any textual support in the Constitution: that the grand jury deliberate and vote without the prosecuting attorney present. The Supreme Court has been less than eager to use of the Due Process Clause to enlarge the

language of the Constitution by indirection. Such textual support as can be found for the obligation the petitioner seeks to impose is located in a federal rule of procedure which has not been viewed to be of constitutional dimension. And even in the federal courts, violation of this rule does not give rise to the relief petitioner seeks unless there has been a demonstration that the violation substantially influenced the decision to indict, a demonstration petitioner does not even attempt to undertake.

Finally, and most fundamentally, to the degree that the fully considered and plainly authorized departure from federal practice made by the state grand jury in reliance on Mass.R.Crim.P. 5(g) can conceivably be considered constitutional error, it is rendered harmless by the subsequent verdict of the petit jury. That verdict cannot by any ordinary construction of the word be said to have been the result of any "influence," injurious or otherwise, by the state grand jury's request for the prosecutor's presence during its deliberations and voting.

There was nothing in precedent existing at the point petitioner's conviction became final that would have compelled the state courts to conclude the use of Mass.R.Civ.P. 5(g) should result in the vacating of an otherwise unobjectionable judgment. I therefore turn to the final element of retroactivity analysis and ask whether Smith's claim falls into one of the "narrow exceptions to the nonretroactivity principle." *Caspari v. Bohlen,* — U.S. at ——, 114 S.Ct. at 953.

### 3. *Exceptions to the General Rule Against Non–Retroactivity*

*Teague* and its progeny recognize two exceptions to the nonretroactivity principle. The first is for new rules that place " 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.' " *Teague v. Lane,* 489 U.S. at 307, 109 S.Ct. at 1073 (citation omitted) (plurality). This substantive exception clearly is not applicable to Smith's argument that, as a matter of constitutionally mandated procedure, a state prosecutor may not be present during grand jury deliberations.

The second exception is for " 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle v. Parks,* 494 U.S. 484, 495, 110 S.Ct. 1257, 1264, 108 L.Ed.2d 415 (1990) (citations omitted). This exception is limited to "those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Teague v. Lane,* 489 U.S. at 313, 109 S.Ct. at 1077 (plurality). This exception also is inapplicable to Petitioner's claim.

As the Court explained in *Saffle v. Parks,*

> Although the precise contours of this exception may be difficult to discern, we have usually cited *Gideon v. Wainwright,* 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799] (1963), holding that a defendant has the right to be represented by counsel in all criminal trials for serious offenses, to illustrate the type of rule coming within the exception. Whatever one may think of the importance of respondent's proposed rule [that the jury be allowed to base their sentencing decision in a capital case upon sympathy], it has none of the primacy and centrality of the rule adopted in *Gideon* or other rules which may be thought to be within the exception.

494 U.S. at 495, 110 S.Ct. at 1264 (citations omitted). This echoes the Court's explanation in *Teague v. Lane,* 489 U.S. at 313, 109 S.Ct. at 1076–77:

> Because we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge. We are also of the view that such rules are "best illustrated by recalling the classic grounds for the issuance of a writ of habeas corpus—that the proceeding was dominated by mob violence; that the prosecutor knowingly made use of perjured testimony; or that the conviction was based on a confession extorted from the defendant by brutal methods."

489 U.S. at 313, 109 S.Ct. at 1077 (citations omitted) (plurality) (finding that application of the fair cross-section requirement to the jury venire was not a "bedrock procedural

element" that should be retroactively applied).

Prohibition of a prosecutorial presence, even if requested by the grand jurors themselves, during deliberation and voting does not approach in significance the type of fundamental procedural requirements the Supreme Court has characterized as "bedrock" or "watershed." To be sure, Justice O'Connor's illustrative suggestion in her *Mechanik* concurrence that "if the prosecuting attorney were to remain in the jury room during the jury's deliberations in contravention of the [Federal] Rule, a very real possibility would arise that the jury's deliberations or vote would be unduly influenced by the prosecutor's presence," 475 U.S. at 75, 106 S.Ct. at 944, reflects a strong federal preference for prohibition of the prosecutor's presence. That preference is well-settled. Justice Field stated the federal rule in a characteristically emphatic fashion when he told a federal grand jury he was charging over a century ago that:

> The district attorney . . . has no right to be present pending your deliberations on the evidence. When your vote is taken upon the question whether an indictment shall be found or a presentment made, no person besides yourselves should be present.

*In re Grand Jury Charge*, 30 F.Cas. 992, 996 (C.C.D.Cal.1872) (No. 18,255).[3]

Acknowledging the contrary federal preference, the Supreme Judicial Court of Massachusetts, nevertheless, long ago observed:

> The rule in this commonwealth is not quite so strict. While the prosecuting officer has no right to stay with the grand jury during their deliberations and must withdraw on their request, nevertheless he may remain by their permission and his presence does not invalidate their proceedings.

*Attorney General v. Pelletier*, 240 Mass. 264, 310, 134 N.E. 407 (1922). *See also Commonwealth v. Beneficial Finance Company*, 360 Mass. 188, 208–09, 275 N.E.2d 33 (1971), *cert. denied sub nom., Farrell v. Massachusetts*, 407 U.S. 910, 92 S.Ct. 2433, 32 L.Ed.2d 683 (1972).

Although curiously described in the Reporter's Notes to the Massachusetts Rules of Criminal Procedure as "a major change" to existing practice, Mass.R.Crim.P. 5(g) (Reporters' Notes), Rule 5(g), which allows the prosecutor to be present if the jurors so request, is essentially a codification of the well-settled standing Massachusetts practice affirmed in *Pelletier* and *Beneficial Finance Company*.

The proviso in Rule 5(g) that the prosecuting attorney may be present only upon the "request of the grand jury," reflects a tolerable accommodation of the basic standards for the prosecutor's relation with the grand jury

---

**3.** Emphasis on ensuring the formalities of the rule against the intercession of strangers to the grand jury was particularly pronounced in grand jury practice in the years preceding abolition of the grand jury by England in 1933. With the codification of preliminary examinations in the nineteenth century, Lord Devlin reports,

> the work of the grand jury became superfluous, for it merely duplicated the formal inquiry that was being conducted by the justices. Nevertheless, the grand jury lingered on in a life of ceremony. For the assizes this jury was usually made up of the justices of the county and other notables who assembled at the beginning of each assize chiefly to be entertained at luncheon by the High Sheriff after their morning's work. They were sworn by the judge's marshal in a piece of prose that, sad to tell, departed from the legal ritual, and they listened to a charge by the judge touching upon crime and morals in the county. They then retired to the grand jury room where, mindful of the sheriff's luncheon to come, they heard the witnesses for

the prosecution, or some of them, as nimbly as they could. Each bill, as they found it to be a true bill, was brought into court by two of their number and handed to the clerk of assize; it was not thought proper to dispatch it by a messenger lest, I suppose, some nefarious hand might write in an extra crime. The need for personal delivery was thought to be so imperative that in some courts in which access to the clerk was inconvenient, some contrivance was used to ensure that the transit of the bill from the grand jury to the clerk should be kept out of alien hands. I have seen a sort of fishing net used; grand jurors appeared in the gallery above and with the aid of this instrument transmitted their bills directly into the hands of the clerk. These precautions, being all that were left to mask the insignificance of the grand jury's task, were cherished with a tenacity which increased as their value diminished.

Patrick Devlin, *The Criminal Prosecution in England* 8–9 (1958) (footnote omitted).

established by the American Bar Association. As the commentary to those standards, which do not prohibit the prosecutor's presence during deliberation and voting, recognizes:

In jurisdictions where the grand jury is used as an agency responsible for determining whether charges should be brought against a person, the prosecutor still plays an important role in the process. The case ordinarily is presented to the grand jury by the prosecutor, who has prepared it to that point. Because of the prosecutor's knowledge of the case and legal training, it is appropriate for the prosecutor to "explain" to the grand jury "the law" and "legal significance of the evidence." . . . [P]rosecutors must be careful to remember that the ultimate decision to indict belongs to the grand jury.

Thus, a prosecutor must not take advantage of his or her role as the ex parte representative of the state before the grand jury to *unduly* or *unfairly* influence it in voting on charges brought before it.

The Prosecution Function, Standard 3–3.5 (Commentary), *American Bar Association Standards for Criminal Justice* (2d ed. 1986) (emphasis added).

There are, to be sure, possible accommodations other than that made in Mass. R.Crim.P. 5(g) between the goal of grand jury independence and the self-expressed need of lay grand jurors for the assistance of the prosecutor's legal expertise. Fed. R.Crim.P. 6(d), with its implicit determination that the prosecutor's legal expertise be provided before the grand jury begins privately deliberating and voting, is another accommodation.

But the choice among appropriate accommodations which a state criminal justice system might make in this aspect of its grand jury practice is not for a federal habeas corpus court to mandate. The Supreme Court recently noted in connection with an unsuccessful attempt to establish judicial rules of federal grand jury practice with respect to exculpatory evidence that "we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure." *United States v. Williams*, —— U.S. ——, ——, 112 S.Ct. 1735, 1743, 118 L.Ed.2d 352 (1992). That reluctance must apply with even greater and dispositive force when the invitation to prescribe a particular grand jury procedure is tendered in a state habeas corpus proceeding challenging, as here, a long-standing practice, the use of which has not been shown to diminish the likelihood of an accurate conviction.

### III. *Conclusion*

Because I find that an absolute prohibition on prosecutor presence during state grand jury deliberations would be a new principle of constitutional law not involving a watershed rule of criminal procedure, I decline to grant petitioner the relief he has requested. Accordingly, the petition for a writ of habeas corpus is hereby DISMISSED.