**UNITED STATES of America, Plaintiff,**

v.

**Michael J. COFFEY, Timothy J. Burns, Joseph Difronzo, Joseph Duenser, Michael E. Fusco, Richard A. Gelsomino, Theodore M. Kotsovos, Richard C. Lantini, Anthony J. Sanello, William L. Slaby, Bruce P. Ventura, and David L. Wutzen, Defendants.**

No. 92 CR 203.

United States District Court,
N.D. Illinois,
Eastern Division.

April 5, 1994.

Michael T. Mason, Federal Defender Program, Chicago, IL, for Michael J. Coffey and Lilliana Aditch.

James William Reilley, Dianne Ruthman, James W. Reilley & Associates, Des Plaines, IL, for Timothy Burns.

Joseph R. Lopez, Joseph R. Lopez, P.C., and Timothy Michael Biasiello, Chicago, IL for Joseph C. Duenser aka Joe Concrete.

Loraine Anne Ray; Erika B. Cunliffe, Law Offices of Jeffrey Urdangen, Ltd.; and Thomas Michael Breen, Martin, Breen & Merrick, Chicago, IL, for Michael E. Fusco.

Michael D. Monico, Monico, Pavich & Spevack; Sheldon Bart Nagelberg; and James John Cutrone, Chicago, IL, for Richard A. Gelsomino.

William J. Stevens, Chicago, IL, for Theodore M. Kotsovos.

Sam Adam, Chicago, IL, for Richard C. Lantini.

Edward Marvin Genson, Genson, Steinback & Gillespie, Chicago, IL; and Alexander M. Salerno, Law Offices of Alexander M. Salerno, Palos Heights, IL, for Anthony J. Sanello.

Linda Amdur; and James Thomas Hynes, Law Office of James T. Hynes, Chicago, IL, for William L. Slaby aka Tennessee Jed.

Matthew William Sons, Stillo & DeMeo, Robert DeMeo, Chicago, IL; and Alexander M. Salerno, Law Offices of Alexander M. Salerno, Palos Heights, IL, for Bruce P. Ventura.

Cynthia Louise Giacchetti, Law Offices of Cynthia Giacchetti, Chicago, IL, for David L. Wutzen.

John L. Burley, U.S. Attorney's Office, Chicago, IL, for the U.S.

### MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

The seven-count indictment in this case, involving the Outfit and members of an outlaw motorcycle gang, charges the twelve Defendants with a conspiring to manufacture and distribute marihuana. It also charges several of the Defendants with obstruction of justice and intimidation of witnesses. Earlier, the Defendants filed approximately fifty pretrial motions which we resolved in a lengthy Memorandum Opinion and Order, *United States v. Coffey,* No. 92 CR 203, 1993 WL 424239 (N.D.Ill. Oct. 15, 1993), and we have returned to this matter on several occasions since then. *See United States v. Ventura,* No. 92 CR 203, 1993 WL 532488 (N.D.Ill. Nov. 30, 1993); *United States v. Burns,* No. 92 CR 203 (N.D.Ill. Feb. 3, 1994); *United States v. Deunser,* No. 93 CR 203, 1994 WL 48620 (N.D.Ill. Feb. 14, 1994). Now before us is yet another round of pretrial motions. First is a motion filed by Defendant Gelsomino, and joined by all other Defendants, to dismiss the Indictment in this case. Second is a similar motion filed by Defendant Lantini and joined by Defendant Fusco, accompanied by motions by Lantini for disclosure of grand jury material, identification of the panel members, and for leave to interview grand jurors as well as a motion for an evidentiary hearing. For the reasons stated below, the motions are denied.

### *Background*

Before us is an issue that can best be described as the classic tempest in a teapot. Robert Girardi was a member of the Special October 1992–I Grand Jury that indicted this case on July 22, 1993. Unfortunately, Girardi was also a lifelong friend of a target of the grand jury investigation, Defendant Richard Gelsomino. During the early summer of 1993, Girardi began meeting with Gelsomino at area restaurants. At those meetings, Girardi discussed the grand jury proceedings involving Gelsomino and other persons of interest to Gelsomino. Gelsomino took coded notes of this information and shared it with his friend and co-defendant, Richard Lantini, who apparently felt that it was a set up and went to his attorney with the information.

Eventually, this information was shared with the government and Gelsomino agreed to cooperate in nailing his friend Girardi. Gelsomino turned over the notes he had taken and agreed to continue his meetings with Girardi wearing a wire. Several conversations between Gelsomino and Girardi were recorded with Gelsomino's consent. In those conversations, Girardi disclosed information about the grand jury proceedings, including the identity of witnesses and the content of their testimony.

Up until this point, Girardi had provided Gelsomino with the information gratis, apparently because of his friendship with Gelsomino. Though there had been hints earlier from Gelsomino that some higher-ups may be willing to pay Girardi for his information, nothing had been forthcoming. However, Girardi, who had gone through a messy divorce and was carrying enormous gambling debts and child support payments on a grocery clerk's salary, began hurting financially. Playing on Girardi's financial desperation, Gelsomino arranged a meeting between Girardi and an undercover FBI agent posing as a wise guy interested in paying for Girardi's information.

The meeting was held in December 1993, in a McDonald's parking lot in the western suburbs. Girardi told the agent that he did not want to get in trouble, but that he "felt good about helping people, especially Italians." The agent offered Girardi $1,000 up front to help Girardi buy Christmas presents for his children. Thereafter, Girardi was to receive $500 dollars per week as long as the information he provided merited it. The meeting was recorded.

Soon thereafter, Girardi was arrested. Though he initially denied any wrongdoing, when confronted with the tapes, Girardi quickly admitted talking to Gelsomino. However, he emphatically denied ever approaching any other grand jurors about participating in his scheme. Girardi was indicted on January 20, 1994, for contempt of court, bribery, and obstruction of justice.

Like bees to honey, this information drew the rapt attention of the defense in this case. Mr. Gelsomino has moved to dismiss the indictment based upon his contacts with Mr. Girardi, arguing that the grand jury was indelibly tainted, and the other Defendants have joined in that motion. In support of his motion, Mr. Gelsomino claims that Girardi told him that three other grand jurors were willing to vote against any indictment naming Gelsomino or Lantini in exchange for $10,000 and airfare to Hawaii. Raising the same issue, Defendant Lantini has filed his own barrage of motions.

## Discussion

Rule 6(e) provides that "[a] grand juror ... to whom disclosure is made under paragraph (3)A)(ii) of this subdivision shall not disclose matters occurring before the grand jury.... A knowing violation of Rule 6 may be punished as a contempt of court." Fed. R.Crim.P. 6(e)(2). The Defendants argue that Mr. Girardi's contacts with Gelsomino have so tainted the grand jury proceedings in this case that the Indictment must be dismissed.

■ However, "[t]he text of Rule 6(e) contains no hint that a governmental violation of its prescriptions gives rise to a right not to stand trial." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 802, 109 S.Ct. 1494, 1499, 103 L.Ed.2d 879 (1989). Rather, Rule 52(a) provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 52(a). It is clear that Rule 52(a) applies to errors, defects, and irregularities occurring before the grand jury. *Bank of Nova Scotia v. United States,* 487 U.S. 250, 255, 108 S.Ct. 2369, 2373–74, 101 L.Ed.2d 228 (1988) (citing *United States v. Mechanik,* 475 U.S. 66, 71–72, 106 S.Ct. 938, 942–43, 89 L.Ed.2d 50 (1986)).

■ Applying Rule 52(a) to a claim of irregularities before the grand jury, the Supreme Court recently held that a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants. *Bank of Nova Scotia,* 487 U.S. at 254, 108 S.Ct. at 2373. Thus, dismissal of the indictment is only appropriate " 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia,* 487 U.S. at 256, 108 S.Ct. at 2374 (citing *Mechanik,* 475 U.S. at 78, 106 S.Ct. at 946). An exception to this rule applies in cases where "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair...." *Id.* at 257, 108 S.Ct. at 2374. However, that exception has been applied exclusively by the Court in cases where discrimination affected the com-

position of the grand jury panel. *Id.* (citations omitted).

■ Applying the harmless error standard of Rule 52(a) to the present case, it is clear that the Defendants' motions to dismiss the Indictment must be denied. The facts merely indicate that a single grand juror who had been a lifelong friend of a Defendant leaked information about the proceedings to that Defendant in violation of Rule 6(e). There is no prejudice inherent in such a situation under the facts of the present case. Indeed, how having advance notice that one is about to be indicted constitutes prejudice escapes us.[1] The irony of Gelsomino's request that his Indictment be dismissed because of conduct he participated in has not escaped us.

More importantly, there is no indication that Girardi's conduct affected the grand jury's decision to indict in any way. One would expect Girardi's influence to be felt, if at all, in swaying the grand jury against returning indictments against Gelsomino and Lantini. Indeed, if indictments were not returned against Gelsomino and Lantini, the Defendants who were indicted might have a much stronger argument: they could argue that the tainted grand juror(s) shifted blame away from Lantini and Gelsomino and onto them. However, Gelsomino and Lantini were both indicted. We can only conclude that Girardi had no improper influence over other grand jurors.

Our review of the government's *in camera* submissions confirms our feelings on this issue. Interviews of grand jurors by the FBI uniformly indicate that Girardi's contact with Gelsomino had no influence on them because they were simply unaware of it. Further, nothing supports Gelsomino's claim that Girardi told him that he could deliver the votes of three other grand jurors in exchange for cash and airfare to Hawaii. Girardi himself claims that he did not approach any other grand juror to influence their vote, and every grand juror interviewed categorically denied being approached by Girardi in that fashion.

■ Finally, we do not believe that this is a case where "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair...." *Bank of Nova Scotia,* 487 U.S. at 257, 108 S.Ct. at 2374. There is nothing fundamentally unfair to the Defendants about the fact that Girardi leaked information to Gelsomino. Certainly, such conduct cannot be likened to cases where this exception has been applied because the composition of the panel was tainted by racial or gender bias. *See Vasquez v. Hillery,* 474 U.S. 254, 260–64, 106 S.Ct. 617, 621–24, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of grand jury compelled dismissal of indictment); *Ballard v. United States,* 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946) (exclusion of women).

Because we have found, based upon the arguments of the parties, the law, and the government's *in camera* submissions, that Mr. Girardi's conduct did not prejudice the Defendants or impugn the overall integrity of the grand jury's decision to indict in this case, the Defendants' motions to dismiss the indictment are denied. Further, Defendant Lantini's motions for disclosure of grand jury material, for names, addresses and telephone numbers of grand jurors, for leave to interview grand jurors, and for an evidentiary hearing are also denied. Given our findings above, Lantini cannot make the substantial showing needed to overcome the strong public interests in maintaining the secrecy of those materials. *See, e.g. United States v. Peters,* 791 F.2d 1270, 1283–84 (7th Cir.1986) (district court did not abuse its discretion in denying defendant's motion for access to grand jury materials without a hearing after reviewing government's sealed submission).

### Conclusion

Where, as here, a single grand juror leaked information to a target of the grand jury proceedings, but the grand jury indicted the target and others without the slightest indication that other grand jurors were tainted by, or even aware of, the leak, dismissal of

---

1. The opposite is most likely true. Whether related to Mr. Girardi's disclosures or not, we note that Defendant DiFronzo conveniently disap-

peared shortly before the Indictment in this case was handed down. He remains at large.

**524**

the Indictment is not warranted. Fed. R.Crim.P. 6(e), 52(a). Defendants' motions are denied. The denied motions include Gelsomino's motion to dismiss, joined by all Defendants, and Lantini's motions to dismiss, joined by Defendant Fusco, and Lantini's motions for disclosure of grand jury material, for names, addresses and telephone numbers of grand jurors, for leave to interview grand jurors, and for an evidentiary hearing.