UNITED STATES

v.

Justin M. LEWIS, Lance Corporal
(E–3), U.S. Marine Corps.

NMCCA 200200089.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 9 April 2002.

Decided 15 April 2005.

Lt Colin Kisor, JAGC, USNR, Appellate Defense Counsel.

Lt Guillermo Rojas, JAGC, USNR, Appellate Government Counsel.

Before CARVER, Senior Judge, WAGNER, Appellate Military Judge, and PRICE, Senior Judge.

WAGNER, Judge:

A military judge, sitting as a general court-martial, convicted the appellant, pursuant to his pleas, of attempted distribution of ecstasy; conspiracy to use and distribute controlled substances; use of ecstasy (two specifications), ketamine, LSD, and methamphetamine on divers occasions; possession of ketamine; possession of ecstasy with intent to distribute; and distribution of ecstasy (two specifications), in violation of Articles 80, 81, and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 881, and 912a. The appellant was sentenced to a dishonorable discharge, confinement for 5 years, total forfeiture of pay and allowances, and reduction to pay grade E–1. Pursuant to a pretrial agreement, the convening authority approved the sentence as adjudged, but suspended all confinement in excess of 42 months.

The appellant claims that (1) he suffered unlawful command influence because the actions of the trial counsel and staff judge advocate forced the recusal of the military judge originally detailed to his court-martial; (2) he was denied a speedy trial under Article 10, UCMJ, 10 U.S.C. § 810; and (3) he was denied a speedy review of his court-martial.

After carefully considering the record of trial, the appellant's three assignments of error, the Government's response, and the appellant's reply brief, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Facts

The appellant was one of a large number of Marines stationed at Camp Pendleton, California, who used, possessed, and distributed ecstasy, ketamine, LSD, and metham-

phetamine together, primarily at off-base "raves." Civilian authorities initially arrested and charged the appellant on 17 March 2001, when he attempted to sell ecstasy to an undercover police officer. He was immediately processed and released back to his command. The appellant was returned to duty with no restrictions imposed on his freedom. At the same time, there was an ongoing Naval Criminal Investigative Service (NCIS) investigation into drug activity in and around Camp Pendleton. During the course of the investigation, the appellant was implicated in additional drug use and distribution.

On 14 August 2001, the appellant and several other Marines were placed in pretrial confinement based on allegations that they had threatened two civilian females involved in the drug activity under investigation by NCIS. On 20 August 2001, the appellant, along with several other Marines, was afforded a magistrate's hearing into his continued pretrial confinement as required by RULE FOR COURTS-MARTIAL 305 (i)(2), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.). The magistrate did not find the appellant to be a flight risk, but did continue pretrial confinement because he felt the appellant would likely engage in further criminal conduct if not confined.

Civilian authorities waived jurisdiction over the pending drug charges, and on 22 August 2001, charges were preferred against the appellant for those offenses as well as drug activity gleaned from the NCIS investigation. The appellant was not, however, charged with communicating a threat.

An additional charge was preferred on 24 August 2001, the same day that the Article 32, UCMJ, investigation was ordered. The appellant retained civilian defense counsel on 26 August 2001. The defense requested 46 days of delay from 6 September to 22 October 2001. During that delay, the appellant waived his right to an Article 32, UCMJ, investigation and charges were referred on 24 October 2001.

The appellant was arraigned on 7 November 2001 before Major (Maj) W, a military judge in the Sierra Judicial Circuit. Captain (Capt) Weston, USMC, was the detailed trial counsel. Civilian defense counsel's presence was waived for arraignment. Neither side had any voir dire or challenge of the military judge at the initial arraignment. The appellant entered pleas on 18 December 2001 before Maj W, with civilian defense counsel now present.

On 14 January 2002, Maj W called the court to order to hear motions. At this time, Capt Weston requested and received permission to conduct voir dire of the military judge. During the course of the voir dire, Capt Weston questioned Maj W's impartiality because she had presided over two companion cases, because of Maj W's prior professional relationship with the civilian defense counsel while the latter was on active duty, because of Maj W's social interaction with the civilian defense counsel, and because Maj W had expressed her displeasure to another trial counsel in a court-martial occurring over a year before wherein the trial counsel inquired into whether there had been ex-parte contact with the civilian defense counsel regarding an upcoming case.

At the end of the voir dire, Capt Weston moved for the military judge's recusal. The motion was denied. Capt Weston then presented a written motion he had previously prepared asking the military judge to reconsider her ruling. The motion was subsequently denied. Capt Weston requested a continuance to file a Government appeal of the ruling under R.C.M. 908(a), but the request was denied.

On 15, 16, and 17 January 2002, the court heard evidence on the defense motion to dismiss for prosecutorial misconduct and unlawful command influence. During the course of the motion, Capt Weston conducted all examination and cross-examination of witnesses for the Government. He was called as a Government witness on the motion and was examined by a third trial counsel detailed to the case solely for that purpose. Capt Weston's direct testimony alone takes up 47 pages of the record of trial, and his entire testimony takes up 120 pages of this 1068-page record of trial, over ten percent of the entire trial and a majority of the motion. The assistant trial counsel presented argument on the motion.

While litigating the motion, the defense called the staff judge advocate for 1st Marine Division, Lieutenant Colonel (LtCol) Canham, as a witness. He testified that he had advised Capt Weston in the course of preparing for trial regarding trial tactics, as he did with all trial counsel. He had specifically advised Capt Weston regarding the voir dire of and motion requesting recusal of the military judge. He had not assisted Capt Weston in drafting the motion or obtaining the affidavits, but had assisted him by researching and providing citations to authority. LtCol Canham had also spoken by telephone with the Head of Appellate Government, Colonel (Col) Rose Favors, regarding the voir dire and challenge of Maj W. LtCol Canham testified that Col Favors characterized the military judge as "obviously lying" during the voir dire.

LtCol Canham also testified that he expressed his opinion to Col Favors that Maj W was biased toward the civilian defense counsel because of the great latitude that he had observed Maj W give the civilian defense counsel in moving about the courtroom. He also characterized the military judge and the civilian defense counsel being seen leaving a theater together as a "date." Shortly thereafter, the following colloquy occurred:

Witness: ... If you really want to get tacky—and I'll tell you what else I told Colonel Favors.

TC: Yes, sir, if you would, sir.

Witness: I said that the judge—

CDC: Objection. I don't think anybody really wants to get tacky, and I think he's made his point as to how he has—

Witness: I have more to say. I'm not finished. Thank you.

CDC: I'm making an objection, sir.

Witness: I haven't finished my point.

Record at 208. At this point the military judge interrupted and cautioned the witness to limit his answers to the questions asked. In spite of this warning, LtCol Canham continued to direct comments to the civilian defense counsel while on the stand, interrupted the civilian defense counsel during discussions with the military judge, and en-gaged in argument with the civilian defense counsel.

On 17 January 2002, without ruling on the pending motion, Maj W recused herself and withdrew from further participation in the court-martial. Maj W stated that there was no basis for recusal either in fact or on an appearance of impropriety standard. Maj W stated as the sole basis for the recusal her inability, following the Government's attack on her character, to remain impartial. Maj W stated that she was "mortally disappointed in the professional community that is willing to draw such slanderous conclusions from so little information." *Id.* at 422.

Maj W also made several statements regarding potential prejudice toward the appellant from the actions of the Government. Critical in that regard was Maj W's opinion that an abuse of discretion had occurred at the magistrate's hearing that would most likely have resulted in 3–for–1 credit for the entire time the appellant spent in pretrial confinement. *Id.*

On 22 January 2002, counsel were notified that a second military judge, LtCol Delzompo, had been detailed to the court-martial, also from the Sierra Circuit. LtCol Delzompo, after reading the motions and accompanying exhibits, as well as the transcript of the trial to date, recused himself *sua sponte* on 15 February 2002. His reasons for recusal included the fact that he knew so many of the actors involved in the case, but mainly because he was so shocked and appalled by the unprofessional conduct of Capt Weston and LtCol Canham that he was not convinced he could remain objective. LtCol Delzompo characterized Capt Weston's conduct as offensive and stated that LtCol Canham's "crass, sarcastic, and scurrilous characterization of the social interaction between [Maj W] and [civilian defense counsel], bespeaks an underlying ignorance, prejudice, and paranoia on the part of the government that I can neither understand nor set aside." *Id.* at 439.

On the recommendation of LtCol Delzompo, Navy military judges from the Southwest Judicial Circuit completed the court-martial. Counsel were notified on 19 February 2002 that a judge had been detailed. On 21 Feb-

ruary 2002, the defense submitted a demand for speedy trial. Captain (CAPT) Fagan held the next session of the court on 22 February 2002. At the urging of the defense, CAPT Fagan set 26 February to hear the defense motion for release from pretrial confinement. In order to accommodate the defense desire to expedite that motion, Commander (CDR) Wities, also from the Southwest Judicial Circuit, was detailed as military judge to hear the motion.

On 26 February 2002, following presentation of evidence and argument, CDR Wities ordered the appellant released from pretrial confinement. During argument on the motion, CDR Wities asked whether the civilian defense counsel understood that by obtaining release from pretrial confinement, the appellant would be terminating any potential further credit toward confinement. The military judge noted that the facts already provided established the possibility that there would be judicially ordered credit for illegal pretrial confinement that would exceed day-for-day credit. In spite of the fact that Capt Weston's testimony on the unfinished prosecutorial misconduct/unlawful command influence motion was considered by the military judge as evidence on the motion to release the appellant from pretrial confinement, he presented the Government's argument.

The defense requested that the court arraign the appellant anew on the charges and specifications on the theory that the original arraignment held on 7 November 2001 was no longer valid because the recusal of Maj W amounted to a mistrial. The Government did not agree that Maj W's actions amounted to a mistrial and argued that the first arraignment was valid. The Government had no objection to the pleas being entered again, however, and, when CDR Wities gave the defense that opportunity, they requested that pleas be reserved until after all motions were heard. CDR Wities allowed the pleas to be reserved.

On 11 and 12 March 2002, CAPT Fagan heard defense motions on illegal pretrial confinement, change of venue, speedy trial, mistrial, unlawful command influence, and prosecutorial misconduct. CAPT Fagan granted the defense motion for illegal pretrial con-

finement. He found that the Government had failed to comply with R.C.M. 305(i)(1) and R.C.M. 305(h)(2) requirements for a 48–hour probable cause determination and a 72–hour memorandum from the commanding officer. Accordingly, he awarded one day of additional confinement credit for each day from the date of confinement until the date of the magistrate's hearing, or 7 days. He also ordered 60 days of confinement credit for the conditions of confinement. CAPT Fagan specifically addressed Maj W's comments regarding the magistrate's abuse of discretion and Maj W's recommendation for a 3–for–1 credit. He did not find an abuse of discretion on the part of the magistrate and did not order additional credit.

CAPT Fagan granted the defense motion for a change of venue, which had already been accomplished. The case had been moved from the Sierra Circuit to the Southwest Circuit. He disqualified the SJA, LtCol Canham, and the convening authority from taking post-trial action on the case. He further barred LtCol Canham from attending the remainder of the trial. CAPT Fagan denied the remaining defense motions. In doing so, he noted in his findings that the original arraignment of 7 November 2001 had tolled the speedy trial clock and that the government had met its burden by a preponderance of the evidence that it had proceeded with reasonable diligence. The military judge failed to state whether his finding related to the speedy trial clock under R.C.M. 707 or the speedy trial clock under Article 10, UCMJ, or both.

On 8 April 2002, CAPT Fagan entered findings, in accordance with the appellant's pleas. On 9 April 2002, he adjudged the sentence and adjourned the court-martial. The defense submitted clemency matters for the new convening authority's consideration on 22 April 2002.

The eight-volume, 1068–page record of trial was authenticated on 15 July 2002. The staff judge advocate's recommendation (SJAR) was completed and served on defense counsel on 12 January 2003. The defense submitted an additional clemency on 27 January 2003. An addendum to the SJAR was completed on 5 June and served on defense

counsel on 6 June 2003. Due to the deployment of the designated convening authority, a substitute convening authority took action on the court-martial on 15 June 2003.

On 31 October 2003, the appellant filed a writ of mandamus with this court seeking immediate docketing of his record of trial for appeal. We issued a show cause order to the Government on 7 November 2003. The record of trial was received and docketed with this court on 18 November 2003 and the writ of mandamus was denied as moot on 20 November 2003. In that same order, we denied the appellant's petition for granting of day-for-day credit against confinement for the delay in docketing the record for appeal. The court received the appellant's brief and assignments of error on 26 February 2004 and received the answer on behalf of the Government on 20 September 2004. Finally, the appellant filed a reply brief on 29 September 2004 and moved to attach additional materials on 4 October 2004.

### Unlawful Command Influence

█ In his first assignment of error, the appellant contends that the conduct of the trial counsel and SJA in forcing the recusal of the detailed military judge based on allegations of an alleged romantic relationship with the civilian defense counsel amounted to unlawful command influence and, therefore, that all charges and specifications must be dismissed. We disagree and decline to grant relief.

Unlawful command influence is prohibited under Article 37(a), UCMJ, 10 U.S.C. § 837(a), which states in pertinent part that:

No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case. . . .

█ *United States v. Biagase*, 50 M.J. 143 (C.A.A.F.1999), sets forth the analytical framework for deciding issues involving unlawful command influence. The defense has the burden to raise the issue of unlawful command influence by presenting "some evidence" to show that command influence did exist and that it had a "potential to cause unfairness in the proceedings." *Id.* at 150. The burden of proof then shifts to the Government to show either that there was no unlawful command influence or that it did not have any effect on the findings or sentence of the court-martial. *Id.* On appeal, in order for the Government to prevail, this court must be persuaded beyond a reasonable doubt either that the unlawful command influence did not exist or that it had no prejudicial impact on the court-martial. *Id.* at 151.

The facts adduced at trial leave no doubt that the actions of the trial counsel, Capt Weston, and the SJA, LtCol Canham, were unprofessional. Alleging that the military judge had a romantic relationship with the civilian defense counsel, based solely on being seen exiting a theater together after arraignment in the appellant's case, is a gross abuse of their respective positions of responsibility. Rule 3.5 of Judge Advocate General Instruction 5803.1B, Professional Conduct of Attorneys Practicing Under the Cognizance and Supervision of the Judge Advocate General (11 February 2000), requires that a covered attorney be respectful to the military judge. The manner in which the voir dire was conducted and the crass, contemptuous behavior of LtCol Canham while testifying displayed nothing but disrespect for the military judge.

The American Bar Association (ABA) Standards for Criminal Justice state that "the prosecutor should support the authority of the court and the dignity of the trial courtroom by strict adherence to codes of professionalism and by manifesting a professional attitude toward the judge. . . ." ABA Standards for Criminal Justice: Prosecution Function and Defense Function 3–5.2(a) (3rd ed.1993). The SJA, by his own testimony a supervisory attorney to the trial counsel, is equally liable for this transgression.

Additionally, Capt Weston's testimony took up a substantial portion of the initial motion regarding prosecutorial misconduct, yet he conducted all examination and cross-examination of the other witnesses on the motion. While he did not present argument on the motion, the extent of his testimony and the depth of his examination of other witnesses suggest that he participated as both witness

and advocate on an issue central to the case in violation of Rule 3.7 of JAGINST 5803.1B, Attorney as Witness. Additionally, he argued on behalf of the Government against the defense motion seeking release of the appellant from pretrial confinement, even though his testimony on the prior motion was a substantial factor in the judge's consideration of the issue.

The unprofessional actions of the trial counsel and the SJA improperly succeeded in getting the military judge to recuse herself from the appellant's court-martial. There can be no doubt that, but for their improper actions, the appellant would have been tried before Maj W, vice the judges from the Southwest Circuit. To the extent that the SJA, a representative of the convening authority, advised the trial counsel in the voir dire assault on the military judge and to the extent that his unprofessional behavior as a witness and inflammatory testimony created a bias in the military judge, the facts establish clearly that there was unlawful command influence on this court-martial.

■ Our analysis does not end there. We must next determine whether prejudice exists or whether the Government has established beyond a reasonable doubt that the actions had no adverse impact on the findings or sentence of the court-martial. In the instant case, the appellant alleges prejudice based on the difference between the credit awarded following litigation of the defense motion for illegal pretrial confinement and the credit that Maj W stated she would likely have awarded if she had not recused herself.

■ In the first instance, it was inappropriate for Maj W to provide advisory opinions regarding motions not yet fully litigated before the court. Once she had decided to recuse herself, any rulings or opinions she provided were called into question by her own admitted bias. More importantly, the evidence and argument on the motions had not been completed and she was not yet in a position to consider all the evidence fully and fairly for both sides of the issues.

■ Our superior court has long held that dismissal of the charges is a drastic remedy and has encouraged the courts to turn to alternative remedies where appropriate. *United States v. Cooper*, 35 M.J. 417, 422 (C.M.A.1992); *see also United States v. Pinson*, 56 M.J. 489, 493 (C.A.A.F.2002)(quoting *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981)(action taken must be "tailored" to the "injury suffered")). When an error can be rendered harmless, dismissal is not an appropriate remedy. *United States v. Mechanik*, 475 U.S. 66, 72, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986). Our superior court explained in *United States v. Green*, 4 M.J. 203, 204 (C.M.A.1978), that dismissal of charges is appropriate when an accused would otherwise be prejudiced or no useful purpose would be served by continuing the proceedings. *Id.* (citing *United States v. Gray*, 47 C.M.R. 484, 486, 1973 WL 14764 (C.M.A. 1973)).

In this case, the defense did not challenge either CAPT Fagan or CDR Wities. Both judges diligently heard the testimony and argument and rendered their rulings after thoughtful deliberation. CAPT Fagan, in particular, addressed the issue of unlawful command influence by disqualifying both the SJA and the convening authority from their post-trial roles and barring LtCol Canham from the courtroom for the remainder of the trial. After hearing all the evidence and argument, CAPT Fagan also addressed Maj W's concerns regarding the potential abuse of discretion by the magistrate in continuing pretrial confinement and found no abuse of discretion. The appellant raises no issues regarding the findings or sentence entered by CAPT Fagan.

Under the circumstances of this case, we find no prejudice arising from the actions of Capt Weston and LtCol Canham and decline to grant relief. Whether inquiry into these lawyers' unprofessional conduct is warranted should be resolved by other authorities. *See* JAGINST 5803.1B, Encl. 2.

### Speedy Trial

■ In the appellant's second assignment of error, he asserts that he was denied a speedy trial, as provided by the Sixth Amendment to the United States Constitution and Article 10, UCMJ. The appellant

asks this court to set aside the findings and sentence and dismiss the charges with prejudice. We disagree and decline to grant the requested relief.

The military judge concluded that the appellant was not denied his Article 10, UCMJ, right to a speedy trial, a decision which we review *de novo*. *United States v. Cooper,* 58 M.J. 54, 57 (C.A.A.F.2003). Applying this standard of review, we agree with the military judge that the appellant was not denied his right to a speedy trial under Article 10, UCMJ, or pursuant to the Sixth Amendment.

The appellant was placed in pretrial confinement on 14 August 2001. The defense requested 46 days of excludable delay prior to entering a formal demand for speedy trial on 24 October 2001. The appellant was arraigned on 7 November 2001. The appellant entered pleas on 18 December 2001. The detailed military judge recused herself on 17 January 2002 due to bias resulting from the unprofessional conduct of the trial counsel and the SJA. The second military judge recused himself on 15 February 2002, in large part due to his bias resulting from his shock at the unprofessional behavior of the trial counsel and SJA. The defense once again demanded speedy trial on 21 February 2002. A third military judge ordered the accused released from pretrial confinement on 26 February 2002. On 11 and 12 March 2002, a fourth military judge heard defense motions. That same judge provided the appellant an opportunity to revisit his original pleas and forum selection on 20 March 2002. The military judge entered findings and sentenced the appellant on 8 April 2002.

The appellant, in brief, urges the court to consider all delay after the 18 December 2001 entry of pleas in this case as delay attributable to the Government. The appellant advances several arguments in an attempt to show prejudice suffered as a result of the delay. He argues that the appellant served 196 days in illegal pretrial confinement prior to his release by order of the court on 26 February 2002. He also argues that the appellant would have been tried in January 2002 vice April 2002 in the absence of the government's improper voir dire of the originally detailed military judge.

The military judge stated in his essential findings, Appellate Exhibit LXXXIX, that the 7 November 2001 arraignment tolled the speedy trial clock. While this is true for the speedy trial clock under R.C.M. 707, arraignment does not toll the Government's responsibility under Article 10, UCMJ, and the Sixth Amendment to move forward with reasonable diligence in affording the appellant a speedy trial. *Cooper,* 58 M.J. at 59. To the extent that the military judge may have relied on arraignment to toll speedy trial under Article 10, UCMJ, he was in error.

■ Once an appellant is placed in pretrial confinement, immediate measures must be taken to notify him of the charges against him and either bring him to trial or dismiss the charges. Art. 10, UCMJ. Although the Government is required to exercise reasonable diligence in bringing an accused to trial, proof of constant motion is not necessary. *United States v. Kossman,* 38 M.J. 258, 262 (C.M.A.1993). Furthermore, for an appellant to prevail on an assertion that he was deprived of his right to a speedy trial, he must in the first instance come forward and make a *prima facie* showing or a colorable claim that he is entitled to relief. *United States v. McLaughlin,* 50 M.J. 217, 219 (C.A.A.F. 1999).

■ On appellate review, we give substantial deference to the factual findings of the military judge. *United States v. Doty,* 51 M.J. 464, 465 (C.A.A.F.1999). The factors we are required to consider include: (1) the length of the delay; (2) the reasons for the delay; (3) the assertion of the right to speedy trial; and (4) the existence of prejudice. *United States v. Birge,* 52 M.J. 209, 212 (C.A.A.F.1999)(citing *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). We will also consider, as did the *Birge* court, the following specific factors: (1) did the appellant enter pleas of guilty, and if so, was it pursuant to a pretrial agreement; (2) was credit awarded for pretrial confinement on the sentence; (3) was the Government guilty of bad faith in creating the delay; and (4) did the appellant suffer any prejudice to the preparation of his case as a result of the delay. *Id.*

Applying the foregoing factors, we do not grant the appellant relief. The appellant asserts that the Government be held to account for all delay following his 18 December 2001 entry of guilty pleas. Specifically, the appellant states that he would have been tried in January 2002 vice April 2002 in the absence of the recusal of two military judges. The originally detailed trial judge had set 14 January 2002 as the opening date for motions prior to an expected members case. On 14 January 2002, the trial counsel requested and was granted extensive voir dire of the military judge that began the chain of events leading to her recusal. The appellant was found guilty in accordance with his pleas on 8 April 2002 and was sentenced on 9 April 2002, 85 days after the trial was originally scheduled to begin.

On various occasions during the 85 days between the voir dire of the military judge and sentencing, the court considered evidence and argument on seven defense motions, revisited the appellant's pleas and forum selection, conducted the providence inquiry into the appellant's guilty pleas, and heard sentencing evidence over eight days of in-court sessions. Additionally, the Government proceeded to trial in 12 related cases.

Granting that the unprofessional conduct of the trial counsel and SJA caused the intentional recusal of one military judge and the unintended recusal of a second, it cannot be said that the Government failed to move this case forward with due diligence. The delays caused by the changing of military judges are not so great as to demand relief of their own accord and the appellant advances no prejudice suffered as a result of the delays. Specifically, the appellant received sentence credit for every day spent in pretrial confinement. Since the sentence to confinement was considerably more than the time served in pretrial confinement, the appellant will have served no more days of confinement as a result of the recusal of the two judges.

Having carefully examined the record of trial, including the extensively litigated pretrial motion, we agree with the military judge that the Government exercised "reasonable diligence" in bringing the appellant to trial.

*See Kossman,* 38 M.J. at 262. Finally, other than pretrial confinement, the appellant has not alleged, nor do we find, any specific prejudice resulting from the complained-of delay. Under these circumstances, we find no violation of the Sixth Amendment or Article 10, UCMJ, and decline to grant relief.

## Speedy Review

■ The appellant contends that the delay of 19 months from the date his court-martial concluded to the date that this case was docketed for review with this court was unreasonable and asks that we grant relief. We disagree and decline to grant relief.

■ As stated by our superior court in *United States v. Tardif,* 57 M.J. 219, 224 (C.A.A.F.2002), this court "has authority under Article 66(c) to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a), if it deems relief appropriate under the circumstances." We are further "required to determine what findings and sentence 'should be approved,' based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay." *Id.*

The appellant was sentenced on 9 April 2002, and the resulting 1068–page record of trial was authenticated three months later, on 15 July 2002. The convening authority took action on 15 June 2003 after considering the SJAR, dated 12 January 2003, and the appellant's clemency petition submitted on 17 January 2003. This court received the original record of trial five months later, on 18 November 2003. In *United States v. Timmons,* 46 C.M.R. 226, 1973 WL 14487 (C.M.A.1973), our superior court found that size of the record and the complexity of the review were factors in determining whether delay was reasonable. *Id.* at 227. The delay in this case of 1 year and 7 months from sentencing until receipt by this court cannot be held to be unreasonable given the length and complexity of the record of trial.

Even assuming the delay to be unreasonable, the appellant claims no specific prejudice resulting from the delay and presents nothing to show that he has been in any way harmed or negatively impacted by the length

of post-trial review in this case. Based on all the facts and circumstances in the record before us, including the post-trial delay, and mindful of our obligation under Article 66(c), UCMJ, as expressed in *Tardif,* we are convinced that the findings and sentence approved by the convening authority should be affirmed.

### Conclusion

Accordingly, the findings of guilty and sentence, as approved by the convening authority, are affirmed.

Senior Judge CARVER and Senior Judge PRICE concur.